## WILLIAM FINCH

### v.

### DRUSILLA GREEN et al.

*Opinion filed February 21, 1907.*

1. DEEDS—*equity will correct mutual mistake if a deed is based on valuable consideration.* If a deed is based upon a valuable consideration and is not a mere gift, a court of equity will lend its aid, after the grantor's death, to correct a clear mutual mistake of description.

2. SAME—*rule as to services between members of family being valuable consideration for deed.* Services rendered by one member of a family to another cannot be regarded as a valuable consideration for a deed without proof of the making of an express contract, or of circumstances from which the making of such contract might reasonably be inferred, since the law does not imply a contract in such cases.

3. SAME—*when services constitute a valuable consideration.* A deed from a father to son, made in consideration of the care and trouble which the father had been to the son and his wife and which he would continue to be up to his death, being afflicted with a disease requiring care and services not ordinarily bestowed by one member of a family upon another and which the son and his wife consented to render only upon being compensated therefor, is based upon a valuable consideration.

4. SAME—*effect where services were performed mainly by the grantee's wife.* The fact that most of the personal and disagreeable services constituting the consideration for a deed were performed by the grantee's wife, and not by the grantee, does not render the deed a mere voluntary conveyance, where the services by the wife were performed in the household and she was present and assented to the conveyance to her husband.

5. SAME—*when court will not inquire into adequacy of consideration.* Where the services constituting the consideration for a deed are of such character that they cannot be measured in money, a court of equity will not interfere with the value placed upon such services by the grantor nor enter into any inquiry as to the adequacy of the consideration fixed by the parties themselves.

6. CO-TENANCY—*co-tenants are seized of each and every part of the estate.* Tenants in common are seized of each and every part of the estate, and upon partition each tenant has a right to take his share of the whole.

7. SAME—*rule as to conveyance of a specific portion by one co-tenant.* A conveyance by one co-tenant of a specific portion of the common estate by metes and bounds is void as against the other co-tenants but is binding upon the grantor and his heirs by estoppel.

8. SAME—*when the deed by one co-tenant will be given effect.* Where a father owns an undivided portion of a tract of land in his own right and is a tenant in common with his children in the remaining undivided portion, his deed to the whole property to one son, subject to the life estate of the grantor, will be given effect to the extent of the grantor's proportionate share in the property, and partition will be had as to the remaining portion the same as though the deed had not been made. (*Fredrick* v. *Fredrick,* 219 Ill. 568, explained.)

APPEAL from the Circuit Court of Mercer county; the Hon. EMERY C. GRAVES, Judge, presiding.

BASSETT & MORGAN, and COOKE & WILSON, for appellant:

A valuable consideration consists either in some right, interest, benefit or profit accruing to the one party, or some extension of time, payment, detrimental loss or responsibility given, suffered or taken from the other. Beach on Contracts, 147.

A past consideration is usually not sufficient to support a subsequent promise, but where the past consideration was for services rendered on request, (no promise or remuneration being made at the time, but subsequently,) a promise made to pay for them is binding. Beach on Contracts, 160, 161, 180.

A deed made to pay for services rendered, where the grantor had stated to various persons that he had made the deed for the purpose of compensating the grantee for such services, is based upon a valuable consideration. *Jones* v. *Jones,* 213 Ill. 228.

Specific performance of a contract in parol may be had on the ground that the consideration had been paid in personal services not susceptible of being measured by a pecuniary standard. *Shahan* v. *Swan,* 26 N. E. Rep. 222.

To bring a conveyance within the category of voluntary conveyances there must be a total want of any substantial consideration for the same. A deed by a father to a son in consideration of services already rendered, and love and affection, may be reformed. *Bank* v. *Judy,* 43 N. E. Rep. 259.

If there is any consideration at all for the conveyance, a mistake therein may be corrected. *Comstock* v. *Coon,* 35 N. E. Rep. 909; *Mason* v. *Moulden,* 58 Ind. 1; *Baker* v. *Pyatt,* 9 N. E. Rep. 112.

The benefits received, in the way of religious instruction and consolation, by one who attended regularly upon the ministrations of a religious society, form a meritorious consideration for a conveyance of land to the society which will induce a court of equity to cure a defect in the conveyance. *Church* v. *Town,* 20 Atl. Rep. 488.

Labor performed and energy expended in cultivating and improving land and in caring for and supporting the grantor, in view of the expressed intention of the grantor to give the grantee the property for such labor and care and support, is a valuable consideration. *Pinkham* v. *Pinkham,* 83 N. W. Rep. 837.

A sale by a co-tenant of a whole property in legal effect passes but the share belonging to the vendor. *White* v. *Osborn,* 21 Wend. 72.

A conveyance by one tenant in common, by metes and bounds, of a portion of the undivided property is not void, but it will be given effect so far as it is possible to do so without injury to the other co-tenants. *Young* v. *Edwards,* 10 L. R. A. 55; *Emric* v. *Alvarado,* 27 Pac. Rep. 356; *Garrett* v. *Weinberg,* 20 S. E. Rep. 756; Freeman on Co-tenancy, secs. 194-208; *McElroy* v. *McLeay,* 45 Atl. Rep. 898.

A deed by a tenant in common conveys no greater interest than the undivided share of such tenant in common, even though the deed purports to convey the whole interest. *McRea* v. *Dutton,* 22 S. E. Rep. 149; *Mortgage Security Co.* v. *Gordon,* 22 id. 706; *Woods* v. *Early,* 28 id. 374.

J. H. Connell, and L. D. Thomason, for appellees:

When an attempt is made on the part of a child to reform or enforce a conveyance of land from a parent, the courts will look with suspicion on such alleged contract and surround the heirs with every safeguard of protection. The relationship of the parties affords opportunities for fraud. *Leavitt* v. *Leavitt*, 179 Ill. 87; *Marshall* v. *Coleman*, 185 id. 582; *Vigus* v. *O'Bannon*, 118 id. 347; *Schumacher* v. *Bell*, 164 id. 181.

Where a child lives with the parent, or the parent with the child, the relationship is so intimate between the parties that the law does not imply a contract to pay money for the support, on the one hand, or for the services on the other. The law indulges the generous presumption that what is done for each other by the parties thus nearly related is done gratuitously and as the prompting of natural affection. *Faloon* v. *McIntyre*, 118 Ill. 298; *Collar* v. *Patterson*, 137 id. 406.

Where persons reside together as members of one family, and one of them renders services to the head of the family, the law does not imply a promise to pay therefor nor a promise on the part of the one rendering such services to pay for maintenance, the presumption being that both the services and the maintenance were gratuitous. *Ginders* v. *Ginders*, 21 Ill. App. 522.

There are only two conditions under which a written instrument may be corrected or reformed: First, where the language used is vague, indefinite or uncertain; second, where the false part of the description can be omitted and enough remains to identify the property. *Kurtz* v. *Hibner*, 55 Ill. 519; *Bishop* v. *Morgan*, 82 id. 351; *Bingel* v. *Volz*, 142 id. 221; *Williams* v. *Williams*, 189 id. 508; *Strayer* v. *Dickerson*, 205 id. 257.

The fact that the grantor owned land in the north-east quarter of section 27 and did not own any land in the south-east quarter of said section does not create a latent ambigu-

ity. *Williams* v. *Williams,* 189 Ill. 508; *Bingel* v. *Volz,* 142 id. 221; *Bishop* v. *Morgan,* 82 id. 351; *Kurtz* v. *Hibner,* 55 id. 519.

If the description in a deed is wholly inapplicable to the object said to be intended, extrinsic evidence is inadmissible to show what its author really intended to describe. Underhill on Evidence, sec. 221.

Parol evidence is only admissible to correct a description in a conveyance when the terms used in the deed leave it uncertain what property was intended to be described. Jones on Real Estate, sec. 339.

It is a stern rule of equity that it will not decree the specific execution of a contract unless it is based on some fair and valuable consideration. *Webb* v. *Insurance Co.* 5 Gilm. 223; *Strayer* v. *Dickerson,* 205 Ill. 270.

If the alleged deed in question is to be corrected at all it must be done in accordance with the directions of the grantor as given to the scrivener at the time the alleged deed was executed. The scrivener testified that the grantor directed him to make a deed for the "south ninety-three acres of the north-east quarter of section 27, less amount sold to E. M. Willits." The grantor was a co-tenant with his children of the said ninety-three acres, and such a deed would be an attempt to convey a part of a specific portion, and therefore absolutely void. *Murray* v. *Haverty,* 70 Ill. 310; *Stookey* v. *Carter* 92 id. 129; *Fredrick* v. *Fredrick,* 219 id. 567; *Moreland* v. *Strong,* 73 N. W. Rep. 143; *Marshall* v. *Trumbell,* 28 Conn. 183.

Mr. Justice Cartwright delivered the opinion of the court:

The parties to this litigation are the heirs-at-law of David Finch and Catherine Finch, his wife, and it was commenced by the filing of a bill by appellees against appellant, in the circuit court of Mercer county, for the partition of that part of the north-east quarter of section 27, in town-

ship 14, range 5, in said county, lying south of the Chicago, Burlington and Quincy railroad, containing ninety-three acres more or less, and another tract of forty acres. The only controversy relates to the tract of ninety-three acres. David Finch died December 19, 1905, at the age of eighty-seven years, and Catherine Finch died about fourteen years before that time, when seventy-five years old. Both died intestate. At the time of the death of Catherine Finch she owned the undivided one-eleventh part of the tract in question and David Finch owned an undivided ten-elevenths. On October 19, 1903, David Finch executed a deed intended to convey the tract of land to his son William Finch, the appellant, but by a mistake of the scrivener the land was misdescribed as being in the south-east quarter of the section. The appellant answered the bill, alleging the conveyance of the tract to him by his father and the mistake in the description, and he then filed a cross-bill, in which he claimed title to the interest which his father had, and alleged that a mutual mistake was made in drafting the deed, and prayed the court to correct the mistake or construe the deed to pass title to him to the undivided ten-elevenths of the tract. Answers to the cross-bill were filed by appellees, setting up that the deed was procured by undue influence; that the grantor was mentally disqualified to make it; that there was no valuable consideration for it, and that it was void for the reason that it purported to convey the entire title when the grantor only owned the undivided ten-elevenths. Replications having been filed, the cause was heard and the court refused the relief prayed for by the cross-bill, found the interests of the parties as set out in the original bill and ordered a partition of the premises accordingly. From that decree this appeal was prosecuted.

The facts proved are, in substance, as follows: David Finch, and Catherine, his wife, lived on the tract of land from about the year 1857, he owning an undivided ten-elevenths and she the remaining one-eleventh. About the

year 1880 their son William Finch, the appellant, married, and afterward lived on the farm with his parents. Appellant, with his wife and children, and his father and mother, lived together as one family until the death of the mother, and from that time until the death of the father, on December 19, 1905, the parties lived together in the same way. After the marriage of appellant he did the work on the farm and his wife did the housework. Catherine Finch was in poor health most of the time and David Finch did little or no work, but he bought groceries the same as appellant, and the proceeds of the grain and stock business carried on were divided equally between them. As David Finch advanced in years his health was not good, and he became afflicted with a trouble of the bowels to such an extent that for three or four years before his death he could not control their movements. The discharge would take place in his clothing or bed, and with intervals of a day or a few days, when the trouble would not occur, he would have to be cared for in that respect the same as a child. Laura Finch, the wife of appellant, waited on him personally and performed the necessary services consequent upon his condition, which were of a most disagreeable character. David Finch recognized the nature and the value of the services performed by Laura Finch, and more than two years before his death he made a will, the terms of which are not definitely proved, but apparently the tract of land was devised to appellant. David Finch afterward stated that some of his children were dissatisfied with the will and he feared that there would be an attempt to set it aside. He said that he had been a great deal of trouble to William and his wife, and he wanted them to be paid for it and to have the land on which he resided. He made repeated statements of that character and that he was going to deed the place to appellant and his wife, saying at one time that he was going to make the deed when the wife returned from a visit in Ohio. On October 19, 1903, he sent for W. C. Austin, a justice of the peace, who had

drafted the will, and Austin came to the house and received directions for the conveyance. They talked about the consideration, and he was directed to make it $5000, and he then made a memorandum of the property to be conveyed, as follows: "South 93 acres of the N. E. ¼ of Sec. 27, less amt. sold to E. M. Willits." David Finch had previously made a deed to E. M. Willits of a narrow strip out of the north-west corner of the tract, containing about one-tenth of an acre. Austin prepared a warranty deed as directed, with a consideration of $5000, reserving a life estate in the grantor, but wrote the south-east quarter instead of the north-east quarter. The deed was acknowledged on the day of its date and was recorded on November 25, 1903. The appellees called a witness and proved by him that appellant had told him he was not going to stay on the farm and do what they had been doing for his father and not get any more than the rest of the heirs; that he was not going to stay there unless he was sure that he was going to be paid for what he and his wife were doing, and that he had given his father to understand the situation. The personal services, which were mainly performed by the wife, were continued after the making of the deed for more than two years, up to the death of David Finch, and they were of a character that scarcely any person would have performed them for a money consideration.

There was no evidence tending to prove undue influence which would invalidate the deed, and there can be no dispute of the facts that David Finch was capable of making the conveyance, and that there was a mutual mistake in the description of the land, which was not discovered until after his death.

The first disputed question of fact is whether there was a valuable consideration for the conveyance which would entitle the appellant to have the mistake corrected by a court of equity. If David Finch attempted to convey the land as a mere gift and without any valuable consideration, and the

gift was unexecuted by reason of a mistake in the description of the land, a court of equity would not lend its aid to make the gift effective by correcting the mistake. (*Strayer* v. *Dickerson,* 205 Ill. 257.) It is contended that this conveyance was a mere gift, for the reasons that there was no express contract to pay for the services rendered to the grantor and that none would be implied by the law.

Where parties live together as members of one family the law does not imply a contract on the part of one to pay for services rendered by another, but the presumption arising from the relation is that services are rendered gratuitously. In such a case there can be a recovery only by proving the making of an express contract, or circumstances from which a reasonable inference would arise that such a contract was in fact made. (*Faloon* v. *McIntyre,* 118 Ill. 292; *Collar* v. *Patterson,* 137 id. 403.) The evidence shows that David Finch recognized to the fullest extent a moral obligation on his part to pay for the valuable and unusual personal services rendered to him, but there is no evidence that prior to the making of the will there was an express contract to pay for them in any way. A moral obligation does not suffice for a consideration unless the moral obligation were once a legal one. (*Hart* v. *Strong,* 183 Ill. 349.) The evidence, however, justifies an inference of an express contract between the parties when the will was made, or certainly at the time of the execution of the deed. The deed was executed in the presence of appellant and his wife, and it is clear that it was made in consideration of the services rendered and to be rendered and the care and trouble which the grantor had caused to his son and wife. The services rendered were valuable, and at least after the execution of the deed were not rendered gratuitously but with an understanding that the land was to be compensation for them. The services were of such a nature that they could scarcely be measured in money, and it was entirely competent for David Finch to place such a value upon them as he saw fit. His estimate of

the value of such services would not be disturbed if the court should differ with him in judgment, nor would the court enter into an inquiry as to the adequacy of the consideration fixed by the parties themselves. It is true that the services were rendered mainly by the wife and the conveyance was to the husband, but the services were performed in the household and she was present and assented to the conveyance to her husband. She would have been entitled to her own earnings when laboring for another with the assent of her husband, but for services performed in the household she would have no independent right to recover. (*Switzer* v. *Kee,* 146 Ill. 577.) There was a valuable consideration for the conveyance which would authorize a court of equity to correct the mistake.

The previous conveyance to E. M. Willits was of about one-tenth of an acre, described by metes and bounds, in the north-west corner of the tract, and the direction given to Austin was that this conveyance should be made of the tract except what had been conveyed to Willits. It is contended by appellees that these deeds were void because prejudicial to their rights, and that the title remained in David Finch notwithstanding the deeds and is now in his heirs. Tenants in common are seized of each and every part of the estate, and upon partition each tenant has a right to take his share of the whole. A co-tenant may convey the whole or any part of his interest in the entire tract to one or many grantees, and each grantee will have a right to a partition which is inseparable from a tenancy in common, and to have his share set off in one parcel; but a co-tenant cannot demand that a particular part of the estate shall be set off to him in a partition, and therefore cannot confer any such right on his grantee. He cannot convey a specific part of the estate by metes and bounds to the prejudice of his co-tenant, and thereby prevent such co-tenant from taking, on partition, a share of the common property, such as the grantor in such deed might designate. A conveyance by one tenant in common of a distinct

portion of the estate by metes and bounds is therefore void as against his co-tenants. (*Murray* v. *Haverty*, 70 Ill. 318; *Markoe* v. *Wakeman*, 107 id. 251; *Fredrick* v. *Fredrick*, 219 id. 568; 4 Kent's Com. 368.) Such a deed, however, is not void as against the grantor and his heirs, but it binds them by way of estoppel. (*Frost* v. *Courtis*, 172 Mass. 401; 4 Kent's Com. *supra.*) David Finch could not give to his grantee, the appellant, any greater rights than those held by him, but the conveyance is valid and binding as between the grantor and his heirs-at-law and the grantee. The deed of David Finch, as reformed and corrected, is binding upon the appellees as his heirs-at-law, and they cannot question it as heirs, but they are not bound by it as tenants in common with appellant of the undivided one-eleventh owned by Catherine Finch, and partition must be made precisely as though the conveyance had not been made. The deed does not convey title to any interest except that which David Finch had, and the grantee takes only the proportionate share of David Finch in the property. (13 Cyc. 657.) In the case of *Fredrick* v. *Fredrick, supra,* the devise by Sarah Fredrick of the use of the homestead was prejudicial to the rights of the co-tenants and could not be made operative without prejudice to them, as pointed out in the opinion in that case; but in this case it does not appear that partition may not be made between the appellees and appellant by giving to appellant the undivided interest which was in David Finch. The deed as corrected is effective to pass to the appellant the interest of David Finch after the termination of the life estate.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

                                        *Reversed and remanded.*

Mr. CHIEF JUSTICE SCOTT took no part in the decision of this case.