2020 IL App (1st) 192324-U

THIRD DIVISION
September 23, 2020

No. 1-19-2324

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF MARIA AURORA GARZA, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Gabriel Garza, | ) | Cook County. |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
|     v. | ) | No. 17 P 4749 |
| | ) | |
| Abraham Garza, | ) | Honorable |
| | ) | Kent A. Delgado, |
|     Respondent-Appellee). | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County dismissing the custodial claim filed against decedent's estate pursuant to section 18-1.1 of the Probate Act of 1975 is reversed; a relative who resided with and provided custodial care for a decedent is not required to establish a contract for services nor is required to overcome a presumption that the care was provided gratuitously to be entitled to recover from the decedent's estate under the Act.

¶ 2    This appeal arises from a claim pursuant to section 18-1.1 of the Probate Act of 1975

(Act) (755 ILCS 5/18-1.1 (West 2018)).  Section 18-1.1 of the Act provides for a statutory

custodial claim against estates by any "spouse, parent, brother, sister, or child of a person with a

disability who dedicates himself or herself to the care of the person with a disability."  755 ILCS

5/18-1.1 (West 2018). In this case the trial court dismissed the claim at the close of the petitioner's case. For the reasons that follow we reverse the decision of the trial court.

¶ 3                                              BACKGROUND

¶ 4      Petitioner, Gabriel Garza, filed a statutory custodial claim against the estate of Maria Aurora Garza, deceased. Maria was Gabriel's mother. At the trial on the petition Gabriel adduced evidence that his mother was disabled during the last four years of her life and that during those four years he dedicated himself to her care. Maria's doctor testified Maria suffered from chronic diabetes, gout, hypertension, and obesity and those conditions were partially disabling, but in the last three or four years of her life "her kidney condition start[ed] getting worse, and then she developed some edema, shortness of breath, and she got more debilitated by her chronic kidney condition." Maria's condition would worsen if she had a gout episode. Her doctor also testified that during the last three to four years of life, depending on her gout and arthritis condition, Maria would require someone to assist her with her home medical care. The doctor testified that over the last four years of her life during gout and arthritis episodes her "degree of disability" required someone to live with her.

¶ 5      Gabriel lived with his mother his entire life. Gabriel testified that during the last four years of her life he "did everything" for his mother and described their daily activities including cooking, taking her to doctor appointments, and assisting her to ambulate around the home, to the bathroom, and to bed. Gabriel was his mother's exclusive caregiver during that time.

¶ 6      At the close of petitioner's case in chief the trial court ruled that petitioner failed to overcome the legal presumption that his services to his mother were gratuitous and entered a directed finding against petitioner. Specifically, the trial court ruled, in pertinent part, that "under the law, the presumption is that if it's a family member, you're doing it because you love

them. The law says you're doing it because it's gratuitous. That's the presumption that I have to start with in any case where a family member is asking for statutory compensation for care. The petitioner has the responsibility of overcoming that presumption." The court found the testimony credible but held that Gabriel's care for his mother alone was "not enough to be compensated under the claim that's been filed by the petitioner." The court found there was "no evidence at all that it wasn't done for anything other than gratuitous reasons because he loved her. *** But in order to prevail in this type of claim, you have to show that there was some sort of contract, some sort of expectation between the two parties." The court concluded that while it believed "Gabriel did everything that he could [and] made her life better," he failed to "overcome the presumption that it was gratuitous in nature" and entered a judgment denying the claim.

¶ 7     This appeal followed.

¶ 8                                 ANALYSIS

¶ 9     Whether the circuit court erred in its interpretation of the statutory requirements of section 18-1.1 of the Act presents a legal question of statutory interpretation, which is reviewed *de novo*. *State Bank v. Lower (In re Estate of Lower)*, 365 Ill. App. 3d 469, 477-78 (2006). Section 18-1.1 of the Act reads, in part, as follows:

> "Any spouse, parent, brother, sister, or child of a person with a disability who dedicates himself or herself to the care of the person with a disability by living with and personally caring for the person with a disability for at least 3 years shall be entitled to a claim against the estate upon the death of the person with a disability. The claim shall take into consideration the claimant's lost employment opportunities, lost lifestyle opportunities, and emotional distress experienced as a result of personally caring for the person with a disability. ***

The claim shall be in addition to any other claim, including without limitation a

reasonable claim for nursing and other care." 755 ILCS 5/18-1.1 (West 2018).

¶ 10    The presumption the trial court in this case relied upon arises where a party sought

compensation under an implied contract theory, which was required prior to the passage of

section 18-1.1.

"The rule is that where parties live together as members of one family the

law *does not imply a contract* on the part of one to pay for the services rendered

by another, but the presumption arising from the relation is that such services are

rendered gratuitously.

In such a case there can be a recovery only by proving the making of an

express contract, or circumstances from which a reasonable inference would arise

that such a contract was in fact made."  (Emphasis added.)  *People v. Porter*, 287

Ill. 401, 405-06 (1919).

However, the legislature promulgated section 18-1.1 to alleviate hardships to relatives who

sacrificed the most for their relatives.  See "*The statutory custodial claim*," 18 Ill. Practice,

Estate Planning & Administration § 135:17 (4th ed.) ("Often, the relatives who make the greatest

sacrifices for an invalid member of the family are denied of all recovery because of the absence

of proof of a contract to pay for the services and the presumption that such services are a gift.

An attempt to correct this injustice has been enacted in the form of the 'statutory custodial

claim.' 755 ILCS 5/18-1.1.").  Section 18-1.1 now provides the right to a claim by certain family

members who have resided with and cared for a decedent for at least three years.

¶ 11    The section 18-1.1  claim  is distinct from a claim which may be filed by relatives and

family members who do not reside with the infirm relative.  "It is true that services rendered by a

family member on behalf of another family member are presumed to be done gratuitously. [Citations.] It is not necessary, however, that the claimant live in the same household with the deceased before the trial court can apply the presumption." *Campion v. Tennes*, 93 Ill. App. 3d 597, 602 (1981). The statute states that any person to whom the statute applies ("[a]ny spouse, parent, brother, sister, or child of a person with a disability"), who satisfies the statutory criteria ((1) dedicates himself or herself to the care of the person with a disability; (2) lives with the person with a disability; (3) personally cares for the person with a disability; and does so (5) for a period of at least 3 years) *shall* be entitled to a claim against the estate.

¶ 12    Our supreme court has determined a petitioner under section 18-1.1 is not required to establish a contract or overcome a presumption of gratuitous service.

> "[A] section 18-1.1 claimant must meet two requirements: the claimant must be an immediate family member and must have dedicated himself or herself to the care of the disabled person by living with and personally caring for the disabled person for three years. See 755 ILCS 5/18-1.1 (West 2000); see generally *In re Estate of Hoehn,* 234 Ill. App. 3d 627 (1992) (construing the requirements of section 18-1.1). Upon meeting these requirements, the family member receives the minimum claim amount which corresponds to the disabled person's percentage of disability. Whether the family member has met these requirements and the percentage of disability are fact questions for the jury. See 755 ILCS 5/18-6 (West 2000) (any interested person may demand a jury trial on a claim against an estate)." *In re Estate of Jolliff*, 199 Ill. 2d 510, 526 (2002).

¶ 13    In this case, the trial court erroneously read a limitation or condition into the statute that the legislature did not express when it held petitioner failed to "overcome the presumption that it

was gratuitous in nature" and entered a judgment denying the claim. A presumption the acts at issue were gratuitous "never existed" and, accordingly, the case must be "determined on the basis of the evidence presented." *In re J.V.*, 2018 IL App (1st) 171766, ¶ 180. Because the trial court erroneously applied the statute in entering judgment by relying on a departure from the statute's plain language, we reverse the judgment of the trial court and remand for further proceedings on the petition.

¶ 14                                    CONCLUSION

¶ 15    The judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

¶ 16    Reversed and remanded.